IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 18-CV-00526-DDD-GPG

TERESA HANSEN, on behalf of herself and others similarly situated,

      Plaintiff,

v.

FIRST BANCORP OF DURANGO, INC. DBA THE FIRST NATIONAL BANK OF DURANGO, WAYNE CARSBURG, AND RICK HOOVER,

      Defendants.

## JOINT MOTION FOR COURT APPROVAL OF SETTLEMENT AND DISMISSAL OF CLAIMS WITH PREJUDICE

COME NOW the parties to request Court approval of a proposed settlement of the Plaintiff's Fair Labor Standards Act ("FLSA") claim filed in the above-captioned matter. In support, the parties state:

### STANDARD FOR APPROVAL

Proposed compromise of FLSA claims must[1] be approved by the Court to ensure that negotiated settlements do not thwart the Act's purpose—to ensure that "all our able-bodied working men and women [receive] a fair day's pay for a fair day's work."[2] Parties wishing to settle

---

[1] "[T]here is disagreement over whether FLSA settlements *must* be approved by the Court […]". *Slaughter v. Sykes Enterprises, Inc.*, 17-CV-02038-KLM, 2019 WL 529512, at *6 (D. Colo. Feb. 11, 2019). *See also,* footnote 3, *infra.*

[2] Letter to Congress from President Franklin D. Roosevelt (May 24, 1937) (reprinted in H.R. Rep. No. 101-260 (Sept. 26, 1989), 1989 U.S.C.C.A.N. 696-97); *see also Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1246 (M.D. Fla. 2010) ("To combat the typically unequal bargaining power between employer and employee, Congress prohibits private agreement altering FLSA rights. An employee entitled to FLSA wages may compromise his claim only under the supervision

1

FLSA claims via compromise "must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable." *Baker v. Vail Resorts Mgmt. Co.,* No. 13-CV-01649-PAB-CBS, 2014 WL 700096, *1 (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores, Inc v. United States,* 679 F. 2d 1350, 1353 (11th Cir. 1982)). "Requiring court approval of FLSA settlements effectuated the purpose of the statute, which is to 'protect certain groups of the population from substandard wages and excessive hours . . . due to the unequal bargaining power as between employer and employee.'" *Baker*, 2014 WL at *1 (citing *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945)).[3]

To approve a compromise settlement, the Court must find that (1) litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Baker,* 2014 WL at *1. Because all three elements are satisfied here, the Parties respectfully request that the Court grant this Motion.

---

of either the Department of Labor or the district court.").

[3] It should be noted that, while this section reflects the general legal standard relied upon federal courts, the legal standard regarding approval of FLSA settlements is unsettled in this District. On January 9, 2017, an order was issued in *Ruiz v. Act Fast Delivery of Colorado, Inc.*, No. 14-cv-00870-MSK-NYW, ECF No. 132 (D. Colo. Jan. 9, 2017) (unpublished), holding that absent special circumstances, FLSA settlements do not require court approval. Since *Ruiz*, courts in this District have approached court approval of FLSA settlements in a variety of ways. *Slaughter v. Sykes Enterprises, Inc.,* No. 17-CV-02038-KLM, 2019 WL 529512, at *1 (D. Colo. Feb. 11, 2019). For example, in *Prim v. Ensign United States Drilling, Inc.*, No. 15-cv-02156-PAB-KMT, 2017 WL 3641844 (D. Colo. Aug. 24, 2017), *Davis v. Crilly*, 292 F. Supp. 3d 1167 (D. Colo. 2018), and *Ostrander v. Customer Engineering Services, LLC*, No. 15-cv-01476-PAB-MEH, 2018 WL 1152265 (D. Colo. Mar. 5, 2018) this District approved FLSA settlements without acknowledging *Ruiz* or other opinions. On the other hand, during that same period of time the courts in *Manohar v. Sugar Food LLC*, No. 16-cv-02454-NYW, 2017 WL 3173451, at *2 (D. Colo. July 26, 2017), and *Teague v. Acxiom Corporation*, No. 18-cv-01743-NYW, 2018 WL 3772865, at *1 (D. Colo. Aug. 9, 2018), *Fails v. Pathway Leasing LLC*, No. 18-CV-00308-CMA-MJW, 2018 WL 6046428, at *3 (D. Colo. Nov. 19, 2018), and *Slaughter v. Sykes Enterprises, Inc.*, No. 17-CV-02038-KLM, 2019 WL 529512, at *2 (D. Colo. Feb. 11, 2019), all found that certain FLSA settlements (particularly those regarding claims genuinely disputed by an employer) do not require court approval to be enforceable.

### 1. This Action Involves a Bona Fide Dispute.

Parties requesting approval of a compromise of claims brought under the FLSA must provide the Court with sufficient information to determine whether a bona fide dispute exists justifying the compromise. *Id.* (citing *Dees v. Hydradry, Inc.,* 706 F.Supp.2d. 1227, 1234, (M.D.Fla. 2010)). Where no bona fide dispute exits, the parties may not compromise a plaintiff's entitlement to recovery of the plaintiff's full actual damages, liquidated damages, and a reasonable attorney fee. *Dees,* 706 F. Supp. 2d at 1236 (citing *Lynn's Food Stores, Inc v. United States*, 679 F. 2d 1350, 1354 (11th Cir. 1982) ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.").

Parties seeking approval of an FLSA settlement may establish that a bona fide dispute exists by presenting the following: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Baker,* 2014 WL at *1.

Here, a bona fide dispute exists as to whether Hansen was a non-exempt employee and whether Hansen was entitled to overtime for each of the weeks she claims she was entitled to overtime as well as any rate of overtime compensation. In sum, Hansen alleges she should have been classified as a non-exempt employee; that she worked over 40 hours in every week in which she performed work; and that she should have been paid overtime at her regular rate of pay, which

included commissions.

On the other hand, Defendants deny that Hansen worked over 40 hours per workweek in every workweek as speculated by Hansen. Defendants also assert that Hansen was properly classified as an exempt employee under the highly-compensated employee exemption and, therefore, none of the Defendants owed Hansen any overtime compensation, even if she were to establish that she actually worked over 40 hours in any workweek, which Defendants deny Hansen could prove.

For these reasons, the parties submit that a bona fide dispute exists in this case and justifies the Parties' compromise.

2.  **The Proposed Settlement is Fair and Equitable to All Parties.**

Due to the nature of the dispute, there is a wide range of damages possible in this case. If Defendants prove that Hansen was properly classified as an exempt employee, Hansen is entitled no damages regardless of the number of hours over 40 she worked in each work week. But if Hansen proves that she should have been classified as a non-exempt employee entitled to overtime, Hansen would still would need to prove the number of hours over 40 she worked in each workweek.

Further, Defendants contend that they acted in good faith. If they were to prevail on this defense, then Hansen would not be entitled to liquidated damages. Moreover, this is a settlement of Hansen's claims and is not a judgment against any of the Defendants, individual or collectively. Because the parties dispute whether Defendants acted in good faith and because this is a voluntary resolution of Hansen's claims as opposed to a court-entered judgment, Hansen agrees that the terms of the settlement is fair and equitable to the parties. *See* 29 U.S.C. § 260; *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1540 (10th Cir. 1991) (citing *Doty v. Elias*, 733 F.2d 720,725 (10th Cir. 1984)). Hansen and Defendants agree that their settlement of this case represents a fair and

reasonable resolution to their disputes. Courts consider the following factors when determining whether an FLSA settlement is fair and reasonable and should be approved:

> (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Baker*, 2014 WL at *2 (citing *Rutter & Wilbanks Corp v. Shell Oil Co.*, 314 F .3d 1180, 1188 (10th Cir. 2002)).

Here, the parties negotiated their settlement at arm's length and in good faith. Further, because it is impossible to predict how a trier of fact would decide the parties' bona fide disputes, the parties wish to avoid the burdens and uncertainties of litigation relating to Hansen's claims. For these reasons, it is the opinion of the parties that the settlement is fair and reasonable.

To find that an FLSA settlement is fair and reasonable, the Court must also determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employee rights from employers who generally wield superior bargaining power. *Baker*, 2014 WL at *2. To determine whether a settlement agreement complies with the FLSA, courts look at the following factors: (1) presence of other similarly situated employees; (2) likelihood that plaintiff's circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA. *Baker,* 2014 WL at *2. (*citing Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

Here, Hansen was the only employee who was paid in this manner. Further, the corporate Defendants have been merged into separate existing business organizations during the pendency of this action, which organization have their own compensation policies and practices. Further, Defendants had no history of alleged non-compliance with the FLSA. For these reasons, the parties

submit that the settlement will not contravene the policies of the FLSA.

        3.        **The Proposed Settlement Include a Reasonable Attorney Fee.**

The district court must "review the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Dees,* 706 F. Supp. 2d at 1243. "To determine the reasonableness of a fee request, a court must begin by calculated the 'lodestar amount', which represent the number of hours reasonable expended multiplied by a reasonable hourly rate." *Baker,* 2015 WL at *3 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar amount may be adjusted based upon several factors, including the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and the degree of success achieved. *Baker*, 2014 WL at *3.

FLSA attorney-fee awards are contingent on a successful litigation outcome. Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Capsolas v. Pasta Res. Inc.,* 10-CV-5595 RLE, 2012 WL 4760910 (S.D. N.Y. Oct. 5, 2012) (internal citation omitted). Many individual litigants "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Id.*

According to the agreement of representation between Hansen and her counsel, she owes them $98,371.95, which is calculated based on her counsel's discounted hourly rates and hours spent litigating her case as follows.

Hansen's attorneys' hourly rate and hours worked on his case, as of December 31, 2020, are as follows:

| Firm/Name/Role | Hours | Discounted Hourly Rate | Total Fee |
|---|---|---|---|
| **Albrechta & Albrechta, LLC** | | | |
| Eleni Albrechta, esq. | 116.05 | $187.50 | $21,759.38 |
| David Albrechta, esq. | 35.59 | $187.50 | $6,673.13 |
| Legal Assistant | 4.7 | $56.26 | $264.42 |
| **Albrechta & Coble, LLC** | | | |
| Joseph F. Albrechta | 119.76 | 262.5 | $31,434.38 |
| John A. Coble | 56 | 262.5 | $14,700.00 |
| Jordan Treece | 72.16 | 150 | $11,274.00 |
| CEL/RW | 19.35 | 63.75 | $1,233.57 |
| Kristy Witte | 85.35 | 63.75 | $5,441.07 |
| **Tod J. Thompson, Attorney at Law** | | | |
| Tod J. Thompson, esq. | 23.3 | 240 | $5,592.00 |
| **Total Hourly Fees** | | | **$98,371.95** |

Ex. A – Aff. of Eleni Kennebeck Albrechta; Ex. B – Aff. of Joseph F. Albrechta; and Ex. D – Aff. of Tod J. Thompson (*to be supplemented*).

However, in order to resolve this case to avoid the risk of no recovery, and to ensure that Hansen receives an amount that adequately compensates her for her losses, her attorneys agreed to accept 42.5% of the total settlement plus a reimbursement of costs and expenses. Therefore, the settlement agreement provides for a total payment to Plaintiffs' counsel of $62,605.70 in legal and staff fees and costs. This number was calculated using a contingent fee method pursuant to Hansen's agreement of representation with her counsel which states that, should the parties reach an out-of-court settlement, Hansen agrees to pay her attorneys the greater of 42.5% of the gross amount collected or the attorneys' time at their discounted hourly rate. Ex. C – Agreement of Representation. Each of Hansen's attorney's law firms aver that the fees they are receiving reasonably compensate them for the work performed in this case. Ex. A – Aff. of Eleni Kennebeck

Albrechta; Ex. B – Aff. of Joseph F. Albrechta; and Ex. D – Aff. of Tod J. Thompson (*to be supplemented*).

It should also be noted that the Plaintiff's agreement of representation with her counsel also states:

> In any proposed or actual settlement, in which it is anticipated that the Client will recover less than his/her actual losses, the Firm will seek an allocation of the settlement proceeds that reduces the Firm's recovery of its fees incurred to date in approximately the same proportion as the Client's recovery of his/her actual losses is reduced, where "actual losses" means the Firm's reasonable, good-faith assessment of the Client's anticipated recovery, and where the Firm agrees to calculate its "fees incurred" reasonably and in good faith.

Ex. C – Agreement of Representation. This is precisely what has occurred in the settlement of this case. Plaintiff's attorneys have agreed to reduce their fees to the 42.5% contingent fee instead of the discounted hourly rate as the client is also accepting a settlement that is less than the total actual damages that she might receive in the best-case scenario at trial. This discount for the client and the law firms also takes into account the potential risk of no recovery for either should the case proceed.

The Court's role in this analysis is to determine whether the fees agreed to by the parties are reasonable, "regardless of the method used to calculate fees." *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1173 (D. Colo. 2018). "Fees in the range of 30-40% of any amount recovered are common in […] cases taken on a contingent fee basis […]." *Davis, citing Cimarron Pipeline Construction, Inc. v. National Council on Compensation*, Case Nos. CIV 89-822-T, 1993 WL 355466, at *2 (W.D.Okla. June 8, 1993). It is common for attorneys to take individual FLSA, and other employment law claims, on a contingent basis. *Silva v. Miller*, 307 F. App'x 349 (11th Cir. 2009). While Plaintiff's attorney's fees slightly exceed the range of 30-40% contingent fees it is less than the discounted hourly rate for her attorneys' time, and as such, should be considered reasonable because the attorneys and Plaintiff are satisfied with their respective distributions from the

settlement.

Further, the parties agree that their settlement addresses Hansen's recovery separately from and independently of attorneys' fees considerations. The parties agree that Plaintiff's recovery was not influenced by the issue of attorney fees.

WHEREFORE, the parties respectfully request that this Court enter an Order granting the instant Joint Motion for Court Approval of Settlement, approving the terms of the Parties' agreements, entering a stipulated judgment in this case, dismissing this action with prejudice, and granting any further relief the Court deems just and proper.

Respectfully submitted this 1st day of February, 2021.

| ALBRECHTA & ALBRECHTA, LLC | BECHTEL SANTO & SEVERN |
|---|---|
| *s/Eleni K. Albrechta* | *s/ Michael C. Severn* |
| Eleni K. Albrechta | Michael C. Santo |
| David T. Albrechta | 205 N. 4th Street, Suite 300 |
| 530 Main Avenue, Suite D03 | Grand Junction, CO 81501 |
| Durango, CO 81301 | Telephone: (970) 683-5888 |
| Telephone: (970) 422-3288 | Facsimile: (970) 683-5887 |
| eleni@albrechtalaw.com | santo@bechtelsanto.com |
| david@albrechtalaw.com | Attorney for Defendants |
| Attorneys for Plaintiff | |

TOD J. THOMPSON, ATTORNEY AT LAW

*s/Tod J. Thompson*
Tod J. Thompson
810 Sycamore Street
Cincinnati, OH 45202
Telephone: (513)322-4348
tod@tthompsonlaw.com
Attorney for Plaintiff

ALBRECHTA & COBLE, LTD.

*s/Joseph F. Albrechta*
Joseph F. Albrechta

John A. Coble
2228 Hayes Avenue, Suite A
Fremont, OH 43420
Telephone: (419) 332-9999
jalbrechta@lawyer-ac.com
jcoble@lawyer-ac.com
Attorneys for Plaintiff